UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHELLIE C.,[1]                              )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )   No. 1:21-cv-01791-MJD-SEB
                                            )
KILOLO KIJAKAZI, *Acting Commissioner of*   )
*Social Security*,                          )
            Defendant.                      )

**ENTRY ON JUDICIAL REVIEW**

Claimant Shellie C. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I.   Background**

Claimant applied for SSI in August 2019, alleging an onset of disability as of January 1, 2014. [Dkt. 13-5 at 10.] Claimant's application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Frank Barletta ("ALJ") on November 2, 2020. [Dkt. 13-2 at 33.] On December 4, 2020, ALJ Barletta issued his

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

determination that Claimant was not disabled. *Id.* at 8. The Appeals Council then denied Claimant's request for review on April 12, 2021. *Id.* at 2. Claimant timely filed her Complaint on June 16, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a

conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, he "must provide a 'logical bridge' between the evidence and his conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Barletta first determined that Claimant had not engaged in substantial gainful activity since August 1, 2019, the date her SSI application was filed. [Dkt. 13-2 at 13.] At step two, the ALJ found that Claimant had the following severe impairments: "major depressive disorder, cocaine dependence, and degenerative disc disease." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 15. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform medium work as defined in 20CFR 416.967(c) with the following additional limitations. The claimant is limited to work involving only simple, routine tasks, but not at a production rate pace. The claimant is limited to no more than simple work-related decisions. The claimant can tolerate no more than occasional changes in the work setting. The claimant is limited to occasional interaction with supervisors, co-workers, and the public.

*Id.* at 16.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 19. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 20. Accordingly, ALJ Barletta concluded Claimant was not disabled. *Id.* at 21.

### IV.  Discussion

Claimant argues that ALJ Barletta's decision should be reversed because the ALJ erred by (1) formulating an RFC without any medical opinions of record, and (2) improperly rejecting Claimant's subjective symptoms. As explained below, the Court agrees with Claimant that ALJ Barletta's decision must be reversed.

### A. The ALJ Erred by Failing to Subject Claimant's Medical Records to Expert Scrutiny

Claimant first argues that ALJ Barletta's decision should be reversed because the ALJ erroneously crafted his decision without any medical input, and that Claimant's RFC was unsupported as a result. [Dkt. 17 at 10.]

As previously noted, Claimant filed for SSI benefits in August 2019, and her claim was initially reviewed by State agency consultants Kenneth Neville, M.D., and M. Brill, M.D. [Dkt. 13-3 at 19-20.] At the initial level, the consultants were unable to make a determination, as Claimant "failed to return forms, [and there was] insufficient evidence in file to assess severity of

the allegations." *Id.* At the reconsideration stage, the story was the same: State agency consultants J. V. Corcoran, M.D., and Joelle J. Larsen, Ph.D., were unable to make a determination because Claimant had again "failed to return forms." *Id.* at 27-29. In his decision, ALJ Barletta stated that "[t]he State agency consultants did not have opinions at Initial or Reconsideration, as they found insufficient evidence and there are no other opinions in the record to evaluate." [Dkt. 13-2 at 19.] Indeed, Claimant was not sent for a consultative examination, and the record does not contain any opinions from her medical providers.

Without any medical opinions in the record, ALJ Barletta ultimately came to his own conclusions regarding Claimant's abilities and interpreted complex medical evidence, including at least one MRI and multiple diagnostic and clinical findings, based solely on his lay understanding. [Dkt. 13-3 at 8.] However, as the Seventh Circuit has made clear, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *cf. Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Stage v. Colvin*, 812 F.3d 1121, 1125-26 (7th Cir. 2016); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). The reasoning for this rule is sound: without the benefit of an expert opinion, ALJs are simply not qualified to make their own medical determinations. *Akin*, 887 F.3d at 318; *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). This is especially important where a claimant's record contains "significant, new, and potentially decisive findings." *Stage*, 812 F.3d at 1125. To remedy a lack of sufficient evidence—including a lack of medical opinions—the regulations encourage ALJs to recontact a claimant's medical sources, request additional existing evidence,

ask the claimant to undergo a consultative examination at the Agency's expense, and/or ask the claimant or others for more information. 20 CFR § 416.920b(b)(2).

ALJ Barletta did not pursue any of these options. Instead, he unilaterally interpreted Claimant's medical records without guidance from an expert medical opinion. Doing so constitutes reversible error, and is especially problematic since the entirety of Claimant's medical records were unreviewed; in other words, Claimant's whole record constituted "significant, new, and potentially decisive findings" that should have been reviewed by an expert at the ALJ's direction. *Stage*, 812 F.3d at 1125. As a result, the ALJ's decision is not based on substantial evidence.

In response, the Commissioner argues that "[s]ubstantial evidence does not depend on the existence of a medical opinion and it was [Claimant's] burden to submit medical opinions on her own behalf." [Dkt. 18 at 12.] This reasoning essentially amounts to a waiver argument, but "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); 20 CFR 404.900(b). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111 (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)); *see Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) ("[T]he procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled.") (citing 20 CFR § 416.927(a)(3)). The ALJ was thus "under an obligation to develop a 'full and fair record.'" *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)). ALJ Barletta did not fulfil that obligation here, and remand is necessary to remedy this error.

6

Moreover, to the extent the Commissioner takes issue with the absence of a treating source opinion in the record, a claimant's burden "is to produce evidence, not opinions." *Kemplen v. Saul*, 844 Fed. App'x 883, 887 (7th Cir. 2021); *see Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations."). It seems painfully obvious in this case that ALJ Barletta should have "obtained a medical opinion based on a complete record." *Stage*, 812 F.3d at 1126.

Ultimately, the circumstances at hand amount to an ALJ unilaterally interpreting a claimant's entire medical record without any input from a medical expert. Critically, though, ALJs must rely on medical experts to interpret medical evidence. *McHenry*, 911 F.3d at 871. The opposite occurred here, leading to ALJ Barletta playing doctor—"a clear no-no," as the Seventh Circuit has routinely admonished. *Goins*, 764 F.3d at 680 (citations omitted). On remand, the ALJ shall take care to develop a full and fair record, complete with a medical opinion, ideally in the form of a consultative examination, to assist the ALJ in interpreting Claimant's medical evidence.

**B. The ALJ Erred by Inadequately Evaluating Claimant's Subjective Symptoms**

Claimant additionally argues that the ALJ "fails to provide any explanation of his determination regarding [Claimant's] subjective complaints." [Dkt. 17 at 16.]

Pursuant to Social Security Ruling 16-3p, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related

activities." *Id.*; 20 CFR § 404.1529(c)(1).[2] The ALJ must then consider the claimant's alleged symptoms in light of her daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve the symptoms. 20 CFR § 404.1529(c)(3). The Court's review of this determination is generally deferential unless, "after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, at 751 (7th Cir. 2010). The ALJ's subjective symptom evaluation may be patently wrong where she fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (citation and internal quotation marks omitted).

At her hearing on November 2, 2020, Claimant alleged disability due to major depressive disorder, PTSD, generalized anxiety disorder, chronic pain, degenerative disc disease of the lumbar spine, and residual arthropathy, foraminal stenosis, and radiculopathy. [Dkt. 13-2 at 41-42.] Her pain medications "help a little bit, but not that much," and she rates her pain as a 7/10 or

---

[2] Social Security Ruling 16-3p, which rescinded Social Security Ruling 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her *credibility*. SSR 16-3p, 2017 WL 5180304, at *2. The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests").

8/10 daily. *Id.* at 47. Claimant explained that she can only stand for "about an hour" before needing to sit down due to pain, she can't tolerate "too much walking anymore," and she can only sit for "about five to 10 minutes" before needing to get up because of pain. *Id.* at 49-50. When standing for too long, Claimant's leg and foot will swell. *Id.* at 57. Further, Claimant testified that she can only lift "about five pounds," explaining that, when working a shift at McDonald's, she is unable to lift the 10-pound fry boxes. *Id.* at 50. Claimant also testified that she has panic attacks "when I get too upset," and discussed her issues with stress and anxiety in the workplace as follows:

> [W]hen I get frustrated and I can't understand anything, I get frustrated, and I can't do anything when I want to do something. I get frustrated when I don't understand, and I'm frustrated when I can't walk. I'm just crying right now, while I'm doing it. But—sorry. It just—I just get frustrated really quick.
>
> . . .
>
> I really don't, too much, get along with other—too many people, because I've got a problem with that. Like I said, being around people, they're talking all, like, something I don't understand. I get frustrated, get mad. I just—I just don't like being around people that much. Just, I don't understand half of what they'll be saying.

*Id.* at 52-53.

As for activities of daily living, Claimant testified that she washes dishes and sweeps the floor. *Id.* at 55. Claimant also sometimes babysits her granddaughter when her daughter goes to the store for her, even though that "stresses me out." *Id.* at 55-56. Claimant also explained that her daughter helps remind her to take care of her personal needs. *Id.* at 55. Claimant testified that she works a three-hour shift at McDonald's on Mondays, Tuesdays, and Fridays, so that she doesn't have to work multiple days in a row. *Id.* at 43, 45-46. However, she explained that this work is still difficult because it requires lifting items, lots of standing and walking, and causes pain in her back. *Id.* at 46. Additionally, Claimant testified that McDonalds allows her to take

extra breaks when she needs them. *Id.* at 48. When Claimant gets home from a shift, she testified that she puts on her back brace and "I sit down, don't move anymore." *Id.* at 48.

In his decision, the ALJ recited the following typical boilerplate language to reject Claimant's subjective symptoms:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the evidence generally does not support the alleged loss of functioning for the reasons set forth below.

[Dkt. 13-2 at 17.] As the Seventh Circuit has recognized, however, these blanket statements are "meaningless" because they provide no insight into the ALJ's considerations. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The ALJ then offered brief summaries of a few of Claimant's medical records, but a summary is insufficient—especially an incomplete summary—because it fails to explain *why* the evidence summarized supports the RFC. *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (no logical bridge where the ALJ recited the medical evidence but did not analyze it).

Further, the ALJ does not point out the inconsistencies he claims exist between Claimant's subjective symptoms and the medical evidence (that he unilaterally interpreted). For example, Claimant explained at her hearing that she can only stand for "about an hour" before needing to sit down due to pain; she can't tolerate "too much walking anymore"; she can only sit for "about five to 10 minutes" before needing to get up because of pain; when standing for too long, her leg and foot will swell; and she can only lift "about five pounds," explaining that, when

10

working a shift at McDonald's, she is unable to lift the 10-pound fry boxes. [Dkt. 13-2 at 49-50, 57.] Why this evidence was discounted or did not factor into a specific limitation within the RFC is unclear; the ALJ provides no narrative discussion to connect the hearing evidence to the RFC or otherwise explain *why* Claimant's allegations were discredited.

> ALJ Barletta then acknowledged Claimant's activities of daily living as follows:
>
> The claimant reported that she remains able to take care of her personal needs, help take care of her grandchild and help her with schoolwork, wash dishes, and sweep the floor (Hearing Testimony). While the undersigned acknowledges that the claimant has some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis.

[Dkt. 13-2 at 18.] Critically, because the ALJ's unilateral analysis of Claimant's medical evidence is flawed, as explained above, his reliance on Claimant's daily activities, "taken together and considered in conjunction with the . . . medical evidence of record," cannot be the foundation for rejecting Claimant's subjective symptoms. Indeed, without an appropriate review of the medical record, the only articulated rationale for the ALJ's rejection of Claimant's allegations are the facts that Claimant can generally perform limited activities of daily living. This is not sufficient grounds for discrediting her complaints.

Simply put, the ALJ's narrative does not say enough to enable meaningful review. *See SEC v. Chenery Corp.*, 318 U.S. 90, 94 (1943) ("[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review."). This kind of articulation is a requisite component of an ALJ's decision, and is notably absent here. Remand is therefore necessary for the ALJ to properly consider Claimant's subjective symptoms.

## V. Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED and REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 8 AUG 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.